## NAPLES *against* MINIER.

The fact that there is a mortgage upon lands which have been levied on a *fi fa.* will not dispense with the necessity of holding an inquisition; and a *venditioni exponas* without it is irregular.

ERROR to *Bradford* county.

The plaintiff in error was the plaintiff below, and sued out this writ of error to reverse the decision of the court of Common Pleas, setting aside a *Vend. Expos.* on the ground, that no inquisition had been previously held upon the *fi. fa.* upon which the land was levied.   It appeared to the court, that there was a mortgage upon the land, to secure the payment of certain bonds at different periods, all of which were due.   The counsel for the plaintiff insisted, that the existence of this mortgage rendered the estate of the defendant so uncertain, as to dispense with the necessity of holding an inquisition; but the Court (*Herrick,* President,) being of a different opinion, the *vend. expos.* was set aside. The same question was argued in this court by

*Kinney,* for the plaintiff in error. ·

The position which I take in this cause, is a general one.   That a mortgage upon lands, in all cases where payment can be enforced or sale made within seven years, will avoid the necessity of holding inquisitions for condemnation or extent of the said lands.

The term "reprises" in the *2nd Section of the Act,* 1705, *Purd. Dig. Edition of* 1824, seems not to be very well defined. But the judicial decisions in relation to it have given it a meaning, which sufficiently removes any ambiguity as to its definition. Any incumbrance upon lands levied, or any limitation, situation or condition, which renders the duration of the title or interest of a defendant uncertain, or which limits such interest to a term of time less than seven years, would be comprehended in the definition of the word "reprises" in the act of assembly.

In the case of *Howell* v. *Woolfort,* 2 *Dal.* 77, the court decided,

(Maples *v.* Minier.)

that "on a fair construction of the act of Assembly, they did not think the legislature intended, that an estate for life should be delivered to the plaintiff, in satisfaction of his debt.   The *general interest,* and of consequence, the septennial value, are so precarious that they *could not* have been in contemplation, in making a positive "*provision,* that the estate should be delivered until the plaintiff's debt was paid" &c.   And in case of *John Burd* v. *the Lessee of Dansdale,* 2d *Binn.* 91.   *Chief Justice Tilghman* in delivering the opinion of the court, says.   "The only use of an inquisition, is to ascertain whether the rents and profits will discharge the judgment in seven years; in which case, the land is not to be sold, but delivered to the plaintiff till the judgment is satisfied. But where the defendant has an uncertain interest, such as an estate for life, it is unknown whether it will last seven years."

Now, where a defendant has given a mortgage of his land, he has conveyed all his title thereto, to the mortgagee, only subject to a defeasance of the title so conveyed, on the performance of some condition by himself, which condition may or may not be performed, and on his failure to fulfil the condition expressed in the mortgage, the mortgagee may bring an ejectment on the title conveyed to him, or have recourse to the proceedings pointed out by act of assembly, at his election.   Is not in such a case, the interest of the defendant in the land mortgaged, *uncertain?* at least as uncertain as a life estate, or where the incumbrances by judgments are more than the premises will rent for in seven years? No one will pretend that there *can* be an extent on an execution issued on a judgment on *scire facias* on mortgage.   So far from it, that a sale may be made on a *levari facias,* in the first instance, without a *venditioni exponas;* which can never be done of lands on a *fi. fa.*   Consequently, a mortgage already due, or which may become due in time to enable the mortgagee to obtain judgment on a *sci. fa.* and sale, or prosecute an ejectment within seven years, renders the estate so uncertain in the hands of the mortgagor, that there is no necessity of an inquisition on a *fi. fa.* levied on the same lands; because there cannot, by any legal possibility be an extent on a *levari facias* under the mortgage, which may be foreclosed, and the lands sold, or obtained by ejectment within seven years.   Uncertainty of estate, being by the above mentioned decisions, as well as by a sound and rational principle, an irresistable ground of condemnation of lands levied on by execution.   It is no answer to say, that a mortgagee may or may not proceed to foreclose his mortgage within the seven years.   For the same answer may as well apply to life estates, tenancies at will, or to the operations of judgment liens, other than that, on which the execution levied on the lands, has issued: and it is well established law and practice for the jury of inquisition, to take into conside-

(Naples *v.* Minier.)

ration all existing judgments, either due or to become due, within the seven years; and then to determine whether the profits of the land levied on, will pay ALL the judgments which they find to be liens thereon, within that time. If they adjudge that the profits will not so pay, then they will condemn the land for sale, though there is no *certainty* that any of the judgments will be proceeded upon for collection, besides that on which the execution levied, has issued; and though the latter would by no means be sufficient of itself to condemn the land for sale. But there is, I presume, no one who will pretend, that it is unnecessary to hold an inquisition on a *fi. fa.* issued on any one judgment, if the defendant had waived inquisition, and confessed condemnation for sale of the lands on another judgment. And yet the judgment creditor in the latter case MAY NOT proceed to collect his judgment in seven years. See 1 *Serg. & Rawle*, 100, *per. Yeates, J.* Now I consider a mortgage of land as tantamount to a waiver of inquisition, because the effect is the same, in this, there can by no legal possibility be an extent in either case. That a mortgage is comprehended in the term "reprises," is decided in the case of *Pulaski* v. *King* 1 *Yeates* 477. It seems to be thought by some, that the case of *Pulaski*, v. *King* was unfavourable to the ground I take, inasmuch as it is to be inferred from the language of the court in that case, that the mortgage was to be regarded only in the same light that a judgment should be. But I can see no ground for such inference. The point was not *expressly* decided, nor does it appear by the case, that the question on the distinction of the operation between a mortgage or judgment to condemn land, was raised or considered.

It has been doubted by some, whether the Supreme Court would take cognizance of the point now under consideration on writ of error. It is certainly a subject of much public importance, and ought to be decided and settled by the Supreme Court. And if a question should arise, as to its being a legitimate subject of a writ of error, it strikes me, that it would be settled by the case of *Miller's adms.* v. *Milford,* 2 *Serg. & Rawle,* 35. That was a case removed on error from the judgment of the Common Pleas, on a question of setting aside an execution.

PER CURIAM.—The Universality of the practice, ever since the act of 1705, to require a condemnation of land levied on a *fieri facias,* though subject to mortgage, ought to be decisive of the question. In *King v. Pulaski,* 1 *Yeates* 477, it was held, that the word "reprises" in that Act, clearly includes mortgages; which would be preposterous had the legislature intended that the existence of a mortgage should supercede the inquisition altogether. So far was it from being deemed to have that effect, that it was treated as being just such a reprize as a judgment—another proof

(Naples *v.* Minier.)

that a mortgage has been considered with us as but a species of incumbrance.    In that case, as in this, all the instalments were due or to become due within the seven years; but though that would be material to a question, whether the mortgage were a reprize that might effect the estate of the tenant by extent, if it were pressed by *scire facias,* it would by no means affect the duration of the mortgagor's estate, as the right of the mortgagee to the possession, would depend on very different considerations.  That, however, is not the sort of uncertainty of duration which dispenses with a condemnation; for it would obviously dispense with it whenever the land is unpatented, when quit-rents are in arrears, or, in short, whenever a vendor has a right of entry for the breach of any condition whatever, a consequence which is well known not to follow.    It is true that a condemnation is not necessary to a sale on a *liberari facias;* but that is because the legislature has thought proper to give an advantage to a mortgagee, which it has seen fit to give to no one else.    It is not a little strange that a scruple should have been felt about this point, after a practice of more than a century; or, indeed, that the point should have been made. We deem it a plain one; and feel no difficulty in deciding it.

Judgment affirmed.